## Grider et al. v. Lapsley et al.

March 23, 1945.

L. C. Lawrence for appellants.

Marvin J. Sternberg for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD— Affirming in part, reversing in part.

On October 16, 1860, John Wolford conveyed to John M. Wolford, John L. Lapsley, and Thomas Winfrey, "Trustees of the Baptist Church known as the Liberty Meeting House and their successors in office for the use and benefit of said church", a tract of land in Russell County. On October 1, 1887, the following instrument was executed and recorded:

"Whereas it is proposed by the members of the various denominations of this community to build a new church house on the ground where Old Liberty Church now stands and whereas said grounds are deeded to the Baptist or the trustees of the same.

"Now we the undersigned trustees of both the separate and United Baptist Organizations at the above named church house with the consent of the two churches we represent hereby agree that in consideration of the donation given by the said donations, the said new church house when completed shall be free to all pro-

testant denominations to organize their respective churches in and to worship in when not in use by the Baptist above named and we further agree the Baptist churches we represent shall not use the house more than two Sundays in the month for regular worship when wanted for services by any other of the said denominations and that this agreement or obligation shall be binding on our successors for so long as the house shall last. In testimony whereof we have signed our names. October 1, 1887.

"J. L. Lapsley

"William Blair

his
"Jobey X Kearnes
mark

his
"George X W. Hay"
mark

Alleging that they had rebuilt and kept in repair the buildings on the land, that the Separate Baptist organization had ceased to exist, and that the agreement of October 1, 1887, above quoted had been "set aside and cancelled" on April 19, 1941, "by order duly made and properly entered", the appellees, claiming to be the trustees of the Liberty Baptist Church, instituted this action against George Burton, a preacher of the Separate Baptist Church, who it was claimed, was holding church services in the church building, to enjoin him from entering upon the property. The "order" of April 19, 1941, on which the appellees lay great stress, is thus set forth in their petition:

"That the Trustees of the Liberty Missionary Baptist Church, successors of the original trustees, J. M. Wolford, Thomas Winfrey, and John L. Lapsley, therefore we have full control and care of the property, and We only, We therefore do now terminate the agreement filed in the clerk's office at Jamestown, Kentucky. Anyone entering the Liberty Church House without legal permission is liable to prosecution.

"Trustees

J. V. Lapsley, Chr.
J. S. Browning
R. C. Antle
Marthe Antle
Z. T. Jones
"April 19, 1941."

Burton, by answer and counterclaim, and the appellants, as trustees of the Separate Baptist Church, by intervening petition, denied appellees' title to the property, and alleged that the trustees in the original deed were members of the Separate Baptist Church and that the appellees are not trustees of the Liberty Baptist Church as alleged by them, but of the Missionary Baptist Church which was formerly known as the United Baptist Church. They further alleged that the Separate Baptist Church was still in existence and active; that the intervenors, as successors to the original trustees, were the owners of the property; and that, ''the Church House mentioned above and constructed pursuant to the agreement (October 1, 1887) between the Trustees of the Separate Baptist Church and the Trustees of the United Baptist Church still lasts and stands, and these trustees and petitioners and their organization the Separate Baptist Church, together with all protestant denominations have the authority, right to use said Church House at their pleasure according to the terms of said agreement.''

These allegations were denied by reply, and after much proof had been taken the Chancellor dissolved the restraining order which had been issued against Burton, adjudged that the property belonged to the Separate Baptist and the Missionary Baptist Churches, and awarded the former ''the right to use said property and church buildings on the first and second Saturdays and first and second Sunday mornings of each month for preaching services and Sunday afternoons for Sunday school services'', and the latter, ''the right to use said property and church buildings on the last two Saturdays and Sunday mornings of each month for preaching services in the morning of each Sunday.'' It was further adjudged that ''the Separate Baptist Church has the right to use said property and buildings for revival meeting services, during the first two weeks of each month and the Missionary Baptist Church has the right to use said building for revival meeting services the last two weeks of each month''; and that the agreement of October 1, 1887, is binding and that it be made a part of the judgment. The appellants, the intervening petitioners, prayed an appeal from so much of the judgment as adjudged the title to be in both churches, and the appellees prayed an appeal from the entire

judgment and have been granted a cross-appeal by this Court on the record filed by the intervenors.

Although the appellees in their petition styled themselves "Trustees of Liberty Baptist Church", the testimony and the records kept by them show, if they can be said to show anything clearly, that they were trustees of the Missionary Baptist Church formerly known as the United Baptist Church. Likewise the testimony and the meagre records kept by the Separate Baptist Church indicate that the members regarded themselves as a distinct sect, although the niceties of doctrine which caused the divergence of views are not clearly shown. The agreement of October 1, 1887, shows that the two groups composed the Baptist Church which controlled and had the use of the church property known as the Liberty Meeting House; and these circumstances, coupled with the fact that the grantees in the deed of October 16, 1860, were designated "Trustees of the Baptist Church known as the Liberty Meeting House", tend to create the conviction that no particular sect was intended to have the exclusive ownership. While the evidence indicates that the grantor and original trustees were at some time prior to 1860 members of the "Separate" group, it also indicates that thereafter they became members of the "Missionary" group, and it is impossible to decide on the meager record presented, what group the original trustees belonged to at the time of the conveyance in question. We can say with certainty only that the agreement of October 1, 1887, which was presumably the act of the majority of the members of the congregation, and hence legal, the church being a Baptist church (see Thomas et al. v. Lewis et al. 224 Ky. 307, 6 S. W. 2d 255) vested the right to use the church property in both groups "so long as the house shall last", and neither had the power to rescind it. Since the "Separate" group continues to exist, though diminished in number, and the rights secured to them under the agreement of October 1, 1887, are not extinguishable except by relinquishment, the judgment of the Chancellor upholding the agreement of October 1, 1887, must be allowed to stand. So much of the judgment as adjudges that the title to the property is in both churches is reversed, as it is clear that it belongs to the church of which the original trustees were members at the time of the conveyance of 1860. If the parties desire to litigate the question of title further, they may do so

by taking further proof in the present action or by instituting appropriate proceedings at a future date.

Affirmed in part. Reversed in part.